IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| MASIMINA ORTEGA RODRIGUEZ; | § | CASE NO: 06-50132 |
| aka MAXIMINA ORTEGA RODRIGUEZ | § | |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

## MEMORANDUM OPINION
## CONCERNING DEBTOR'S MOTION TO MODIFY PLAN

Debtor seeks to modify her chapter 13 plan to change the classification and the treatment of the claim of Origen Financial, LLC ("Origen"). Origen's claim is secured by Debtor's residence, a manufactured home. Debtor contends that the modification is clerical in nature, moving Origen's claim from paragraph 4 to paragraph 8 of the plan. The change is much more than clerical. It materially and adversely changes the basis on which the existing plan was confirmed. In addition, it materially and adversely changes the treatment of Origen's claim. Therefore, Origen is not bound by the prior confirmation of Debtor's plan. Debtor's motion to amend the plan is denied because the Court concludes (1) that the proposed modification is not feasible and (2) neither is any plan that would meet the statutory requirements. Therefore, by separate order issued this date, the motion to modify is denied and Origen's motion to lift stay is granted.

### I. BACKGROUND

Debtor filed her petition commencing this case under chapter 13 of the Bankruptcy Code on June 26, 2006. Debtor filed her schedules on August 10. Schedule B lists a 2004 Regal 14x56 Manufactured Home valued at $18,809.00 (the "Property"). Schedule D lists Origen Financial as holding two claims: one for $44,858.95 and another for $4,940.00. The schedules indicate that both claims are secured by the Property.[1]

The Bankruptcy Code provides special protection for creditors whose claims are secured solely by real property that is a Debtor's principal residence. Although the arrearage on those claims can be cured, the entire contractual claim must be paid, not just the value of the collateral at the time that the bankruptcy case was filed. With respect to most other secured claims, by contrast, the debtor is allowed to keep the collateral by paying the present value of the collateral.

Debtor proposed a chapter 13 plan on August 10, 2006. Debtor filed an amended plan on October 18 (docket # 22) apparently after discussions with the chapter 13 trustee concerning the proof of claim filed by Origen. There is no indication that Debtor or the trustee had any discussions with Origen about the amendment to the plan. The Court confirmed Debtor's amended plan on October 25 on the recommendation of the trustee. The plan was confirmed so

---

[1] The $4,940.00 claim is the portion of the claim that was in default when the bankruptcy case was filed.

1 / 6

shortly after amendment on representation by the trustee that the plan met all of the confirmation requirements, including (the Court assumed) that the amendment made shortly before the confirmation hearing was not material.

For both the initial and the amended plan, Debtor used the Court's form titled Uniform Plan and Motion for Valuation of Collateral. Both Debtor's initial plan and Debtor's amended plan treat Origen's claim in paragraph 4, which is intended for claims that are secured by real property that is the debtor's principal residence. Since these creditors must be paid the entire amount of their claim, in paragraph 4 a debtor should specify how the payments in default will be cured and how the payments that come due post-bankruptcy will be paid. Although it is very unwise for debtors to take advantage of the option, the form (as it existed at the time of plan confirmation) allowed a debtor to propose to make regular post petition payments directly to the creditor rather than making those payments through the trustee. Debtor made that unwise choice. Debtor's plan provides for payment of the arrearage through the chapter 13 trustee and for the Debtor to make the remaining payments directly to Origen. For some unknown reason the plan states that the arrearage amount is $18,809 instead of $4,490. Debtor's monthly payment under the plan is $425.00. By listing Origen's claim in paragraph 4, which contains a statement that the post petition payments will be made directly to Origen, Debtor represented that the entire debt to Origen would be paid. It was on that basis that the Court confirmed the plan.

On January 18, 2007, Origen Financial filed a motion for relief from the automatic stay alleging that Debtor had failed to make any direct post-petition payments on the Property.

On March 27 the chapter 13 trustee filed a motion to dismiss the case asserting that Debtor was $1,641 delinquent under the plan.

On April 24 Debtor filed a motion to modify the confirmed plan. Debtor alleged that the principal purpose of the modification was to correct a clerical error, the listing of the Property in paragraph 4 (which deals with real property that is a debtor's principal residence) instead of paragraph 8 (which deals with other secured claims). Paragraph 8 does not contain a provision for payment of Origen's entire claim, directly to Origen. Therefore, by moving Origen from paragraph 4 to paragraph 8, Debtor no longer proposes to pay Origen's entire claim, but to pay only $18,809 of that claim. Debtor's monthly payment under the proposed modification would also be increased to $505 to make up for deficiencies in prior payments due to the trustee.

The hearing on the motion to lift stay took place prior to the hearing on Debtor's proposal to modify her plan. The Court denied relief from the stay contingent on (i) Debtor providing proof of insurance on the Property, (ii) Debtor entering into an electronic funds transfer for payments to the Trustee, and (iii) the approval of a plan modification. At hearing on May 16 the Court found the first two conditions had been satisfied and held a hearing on modification of the plan.

## II.  CONCLUSIONS

A.     Bankruptcy Code § 1322(b)(2) and (b)(5)

Bankruptcy Code § 1322 codifies the mandatory and permissive provisions of a chapter 13 plan, such as whether rights of a creditor can be affected by a plan. The permissive provisions of the section allow the plan to:

> (2) modify the rights of holders of secured claims, <u>other than a claim secured only by a security interest in real property that is the debtor's principal residence</u>, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
> …
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due....

11 U.S.C. § 1322(b) (emphasis added). Bankruptcy Code § 1322(b)(2) precludes a debtor from confirming a chapter 13 plan that does not provide for full payment of a claim that is secured by real property that is the debtor's principal residence. *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993). Claims secured only by a security interest in real property that is the debtor's principal residence are afforded greater protection than claims secured by other kinds of property. The latter are only treated as secured claims to the extent of the value of the collateral.

For claims secured by real property that is a debtor's residence, Bankruptcy Code § 1322(b)(5) allows the debtor to maintain the contract payments during the course of the plan, without acceleration, provided that Debtor proposes to cure any pre-existing default within a reasonable time. This is the treatment that Debtor proposed for Origen.

B.     Modification of the plan

1.     *Confirmation of the Existing Plan does not bind Origen*

The purpose of having a uniform plan is to assist debtors in clearly and uniformly setting forth the proposed treatment of creditors. For creditors other than those secured by real property that is the debtor's residence, the Court's form provides a single document for proposal of the plan and for proposed valuation of collateral so that the valuation hearing can be held at the same time as the hearing on confirmation of the plan.

Debtor argues that Origen Financial is bound by the confirmed plan because that document included a motion for valuation of collateral. But Debtor's confirmed plan (the plan filed on October 18) does not propose to value Origen's collateral nor does it propose to cram down Origen's claim. Origen's claim is listed in Paragraph 4 which deals with security interests

in real property that is Debtor's principal residence. These claims must be paid in full regardless of the value of the collateral. And the language of the plan states that Debtor will make postconfirmation regular payments directly to Origen while arrearages are paid under the plan by the Trustee. Debtor simply did not propose valuation or cramdown of Origen's collateral.

Debtor argues that the listing of the Property in paragraph 4 instead of in paragraph 8 is merely a clerical error that should be corrected through modification of the plan. The error is not a mere typographical error but is a substantive and material change to Origen's right to payment.

      2.     *The motion to modify must be denied.*

Even assuming, for purposes of this decision, (1) that the confirmed plan is a clerical error and that Debtor could, therefore, modify the plan to correct the error, and (2) that Debtor should be allowed to prove that the manufactured home is personalty so that Origen's claim can be crammed down to pay only the value of the collateral, the Court could not approve Debtor's proposed modification of her plan. To approve a modification, the Court must conclude that the modification meets the requirements for confirmation: Bankruptcy Code § 1329(b)(1). The requirements for confirmation are found in § 1325(a).

          a.     The proposed modification does not satisfy § 1325(a)(5)

One of the confirmation requirements is that plan must propose to pay allowed secured claims: Bankruptcy Code §§ 1322(b)(2), 1325(a)(5). If Origen's claim is secured by collateral that is not real property, then the amount of Origen's secured claim is the value of the collateral: Bankruptcy Code § 506. Debtor proposes to pay $18,809. A preponderance of the evidence establishes that the value of the manufactured home is substantially more than $18,809.

The only competent evidence received by the Court at the hearing on this matter was an appraisal that established the wholesale value of the manufactured home at $30,587.55 and the retail value of the manufactured home at $39,214.81. Since Debtor's plan proposes to pay only $18,809, the modification cannot be approved.

Debtor offered as evidence a Notice of Appraised Value from the LaSalle County Appraisal District. Although this evidence was excluded, even if the document were received into evidence it would not establish the value of the collateral by a preponderance of the evidence at the amount that Debtor proposes to pay. That appraisal showed the value of the collateral in 2006 to be $18,809, but the value in 2007 to be $28,152. Because that evidence is ambiguous at best (the Court takes judicial notice that the value of manufactured homes does not generally increase by almost 50% per year) the Court would find the NADA appraisal to be more probative.

A preponderance of the evidence would establish the value at substantially more than $18,809. The exact amount is irrelevant since the Debtor cannot afford to pay even $18,809.

b.	Feasibility

The Court cannot confirm a plan, or approve a plan modification, unless the Court concludes that Debtor will be able to make the payments called for in the plan. The Court cannot make that finding.

Under the plan that was confirmed, Debtor was required to make payments of $425 per month to the trustee beginning in July, 2006. On March 26, 2007, eight months later, the Trustee filed a motion (docket # 30) to dismiss the case alleging that the Debtor was $1,641 delinquent on plan payments (almost 4 payments delinquent). This was not the trustee's first motion to dismiss for failure to make payments. On October 4, 2006, the Trustee had filed a motion (docket # 20) seeking dismissal for failure to make plan payments.

Debtor never denied either delinquency. Debtor proposes to eliminate the delinquency in the modified plan by reducing her obligation in the first 10 months from $4,250 to $2,184. Essentially, Debtor proposes to eliminate the delinquency simply by reducing the obligation to pay. Since the amount that Debtor must pay remains constant, Debtor proposes to increase the remaining 50 months of payments from $425 to $505 to make up or the fact that she failed to make the payments that she initially proposed to make..

Debtor was unable to make about half of her monthly payment of $425. There is no evidence in the record suggesting that Debtor's financial condition has improved or that Debtor will now be able to make payments of $505 per month. If she could not pay $425, and if her financial condition has not improved, there is no reason to believe that she can pay $505.

In addition, Debtor's own modified plan suggests that she will not be able to make these payments. Debtor's amended Schedules reflect that Debtor has $1,175 in income and that she spends $670 to meet all of her living expenses each month. These numbers are simply unrealistic. It is probably not coincidental that the income and expenditure allegations yield $505 of projected disposable income, exactly the amount necessary to fund the increased payment under the modified plan. In the October, 2006, plan, Debtor estimated disposable income of $735 per month, yet she was unable to pay $425 per month in monthly payments.

The Court concludes that Debtor does not have sufficient income to fund a plan that would pay Origen $18,809, much less the greater amount that the Court would set as the value of the collateral upon consideration of the evidence that was received at the hearing. Therefore there is no need to give Debtor an opportunity to amend the motion to modify.

3.	*Origen's motion for relief from the automatic stay*

The Court conditioned continuance of the automatic stay on Debtor having obtained approval of a modified plan. Since the Court denies the motion to modify, the Court grants the motion for relief from the stay.

### III.  MODIFICATION IS NOT APPROVED; STAY IS LIFTED

By separate order entered this date, Debtor's motion to modify the chapter 13 plan is denied.  No additional time will be allowed for Debtor to file a motion to modify.  Origen's motion for relief is granted.

SIGNED 05/24/2007.

*Wesley W. Steen*

WESLEY W STEEN
United States Bankruptcy Judge